*W. D. McNeil,* for plaintiff in error.
*Hardeman, Jones, Park & Johnston,* contra.

---

### 4660. BINION *v.* CENTRAL OF GEORGIA RAILWAY CO.

Applying the principle of the decision of the Supreme Court in *Wright* v. *Southern Railway Co.,* 139 *Ga.* 448 (77 S. E. 384), to the facts in the present record, it was error to grant a nonsuit.

DECIDED MAY 6, 1913.

Action for damages; from city court of Savannah—Judge Davis Freeman. December 18, 1912.

*Osborne & Lawrence,* for plaintiff.
*H. W. Johnson,* for defendant.

POTTLE, J.  The plaintiff's son, a boy of tender years, was killed by one of the locomotive engines of the defendant at a point on one of the defendant's main-line tracks.  In order to reach the main line the boy had crossed several tracks adjacent to the main line, which were constantly being used by the company for switch and storage purposes.  The main-line track also was used for switching.  There was a path on each side of the main line and in the middle of the track, and this path was used constantly by people going across to the shops.  The traveling public also used it as a footway.  The boy was killed in the nighttime at a point on the main line near a side-track which extended from the main line to the property of a manufacturing company.  A nonsuit was ordered upon the application of what has come to be known as "the switch-yard doctrine."  This doctrine is that there can be no implied license to the public to use the track of a railroad company within the limits of its switch-yard.  The doctrine has been held by this court not to apply to a case where there is only one track, which is the main track of the company, although this track may be partly within the yard limits and occasionally used in connection with the switch-yard.  See *Williams* v. *Southern Railway Co.*, 11 *Ga. App.* 305 (77 S. E. 384).  In the present case the main line upon which the boy was killed was in close proximity to a number of other tracks which were used for switching and storage purposes.  But there was evidence from which the jury could find that the point where the boy was killed was not within the limits of a switch-yard proper.  There was also evidence from which the jury could find that the public had an implied license to use the main-line track as a footway at the point where the boy was killed.  The decision of the Supreme Court in the case of *Wright* v. *Southern Ry. Co.*, 139 *Ga.* 448 (77 S. E. 384), seems to us to be in principle controlling.  In that case the Supreme Court, in reference to the place where the plaintiff's daughter, was killed, said:  "At the time of the fatal injury the deceased was walking upon one of the main-line tracks of the defendant, but within its switching-yard limits,  .  .  where the evidence tended to show that many persons were accustomed to walk each day longitudinally along the track to and from their work, without objection from the employees of the defendant."  There the company relied on the same defense that is relied on in the present case, to wit: that the deceased had no

express license to be within its switch-yard limits, that there could be no implied license to be there, and that therefore he must be regarded as a trespasser. After stating that there was evidence to show that pedestrians in considerable numbers were accustomed to walk along and upon the tracks of the defendant within its switch-yard limits, the Supreme Court propounded the following as the controlling question: "Can it be said, as a matter of law, where both the plaintiff and the defendant were negligent, that the defendant owed no duty to pedestrians, within its described switching-yard limits, other than not to injure them wantonly after discovering them in a perilous position? Or was the defendant company, in such circumstances, bound to anticipate that pedestrians were likely to be on the track, and charged with the duty of exercising ordinary care to prevent their injury?" The court answered the question by holding that it was for determination by the jury whether the company's employees were under a duty to look out for the deceased, and whether they used ordinary care to prevent injury to her.

While it may be conceded that the facts in the present record do not make as strong a case for the plaintiff, when considered by the jury, as did the facts in the case above referred to, still the rule is that if there is any evidence which would, upon the application of legal principles, entitle the plaintiff to recover, the case is one for determination by a jury, and can not be disposed of by a nonsuit. The place where the plaintiff's son was killed was hazardous in the extreme; and it was necessary for him to cross several dangerous tracks before he got upon the main line where he was killed. He had no right to go under or over the wire fence which was strung along the road, and he had no right to cross the intervening tracks. If he had been killed while at a place where he had no right to be, his status would have been that of a trespasser. But if he had an implied license to be upon the main-line track and to walk down the path by the side of or between the tracks, the fact that he may have been a trespasser in reaching the point where he impliedly had a right to be would not defeat his right to recover. It was immaterial how he got there. The important question is, did he have a right to be there? The evident purpose of the Supreme Court, in the case cited above, was to limit the switch-yard doctrine to switch-yards proper, and to tracks which are constantly

being used as switch tracks. They doubtless did not intend to hold, nor do we, that a person could have an implied license to use a track in a switch-yard proper, which was being constantly used for switching purposes, merely because it was occasionally used as a main line. Under the ruling of the Supreme Court, when applied to the facts in the present case, the plaintiff is entitled to have the jury determine the following question: Did his son have an implied license to be at the place where he was killed, and, if so, was his death due to a lack of ordinary care on the part of the defendant's servants? If the plaintiff's son was killed within the limits of a switch-yard proper and on a track which was being constantly used for switching purposes, there can be no recovery. If, on the other hand, the place of the homicide was not within the limits of a switch-yard proper, and was at a place where the plaintiff's son had an implied invitation to be, and if the proximate cause of his death was the negligence of the company's servants in failing to anticipate his presence and be on the lookout for him, the plaintiff will be entitled to recover. *Judgment reversed.*