## 13959.  SAVANNAH ELECTRIC COMPANY *v.* THOMAS.

1. A mother may recover for the tortious homicide of her child upon whom she is dependent either wholly or in part and who contributes substantially or materially to her support.    *Clay* v. *Central R. Co.*, 84 *Ga.* 345 (1) (10 S. E. 967); *Daniels* v. *Savannah &c. Ry. Co.*, 86 *Ga.* 236 (12 S. E. 365); *Richmond & Danville R. Co.* v. *Johnston*, 89 *Ga.* 561 (15 S. E. 908); *Augusta Railway Co.* v. *Glover*, 92 *Ga.* 132 (6) (18 S. E. 406)'; *Augusta Southern R. Co.* v. *McDade*, 105 *Ga.* 134 (7) (31 S. E. 420); *Central of Ga. Ry. Co.* v. *Henson*, 121 *Ga.* 462 (3) (49 S. E. 278); *Savannah Electric Co.* v. *Bell*, 124 *Ga.* 663 (2), 665 (53 S. E. 109); *Atlantic Coast Line R. Co.* v. *McDonald*, 135 *Ga.* 635 (7) (70 S. E. 249); *Fuller* v. *Inman*, 10 *Ga. App.* 680 (1); Civil Code (1910), § 4424.

2. In such a case the mother "may recover the full value of the life of the deceased, as shown by the evidence, . . without deduction for necessary or other personal expenses of the deceased had he lived." Civil Code (1910), § 4425; *Clay* v. *Central R. Co.*, supra; *Atlantic Coast Line R. Co.* v. *McDonald*, 135 *Ga.* 635 (3) (70 S. E. 249).

3. "If she were accustomed to earn money, and her individual earnings were sufficient to adequately support her in keeping with her station in life, she would not be dependent in the sense as contemplated by the provisions of the statute above mentioned.    *Georgia Railroad Co.* v. *Spinks*, 111 *Ga.* 571 (36 S. E. 855)." *Atlantic Coast Line R. Co.* v. *McDonald*, 135 *Ga.* 635 (7 a) (70 S. E. 249).

4. On the contrary, the fact of another but insufficient means or source of support will not defeat her action.    *Daniels* v. *Savannah, &c. Ry. Co.*, supra; *Savannah Electric Co.* v. *Bell*, supra.

5. If the father and mother are living in a state of separation, and the earnings of the mother and those of a child living with her and contributing substantially or materially to her support " were used for the common support of the two, and the earnings of both were necessary to the support of both, the mother would be dependent upon the child in the sense employed by the statute. *Daniels* v. *Savannah &c. Railway Co.,* 86 *Ga.* 236 (12 S. E. 365); *Richmond &c. Railroad Co.* v. *Johnston,* 89 *Ga.* 560 (15 S. E. 908); *Augusta Railway Co.* v. *Glover,* 92 *Ga.* 132 (18 S. E. 406); *Atlanta &c. Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (20 S. E. 550, 26 L. R. A. 553, 44 Am. S. R. 145); *Central Railway Co.* v. *Henson,* 121 *Ga.* 464 (49 S. E. 278); *East Tennessee, &c. Ry. Co.* v *Maloy,* 77 *Ga.* 237 (2 S. E. 941). The fact that the earnings of the child alone might not be sufficient to support himself would not conclusively show that the mother was not dependent upon his services. *Augusta Railway Co.* v. *Glover,* supra." *Atlantic Coast Line R. Co.* v. *McDonald,* 135 *Ga.* 635 (7 *b*) (70 S. E. 249).

6. The contribution of the child as contemplated by the statute may be either in money or labor. *Fuller* v. *Inman,* supra.

7. It cannot be said as a matter of law that a child of normal physical and mental development of the age of six years and two months is incapable of contributing to the support of its mother in the sense intended by the statute, but the question is properly one for determination by the jury. *Sugarman* v. *Atlanta Street Railway Co.,* 94 *Ga.* 604 (21 S. E. 581); *Crawford* v. *Southern Railway Co.,* 106 *Ga.* 870 (3) (33 S. E. 826); *James* v. *Central of Ga. Ry. Co.,* 138 *Ga.* 415 (1), 75 S. E. 431, 41 L. R. A. (N. S.) 795, Ann. Cas. 1913D, 4681; s. c. *Central of Ga. Ry. Co.* v. *James,* 143 *Ga.* 753 (3) (85 S. E. 920); *Fuller* v. *Inman,* supra; *Crenshaw* v. *Louisville & Nashville R. Co.,* 15 *Ga. App.* 182 (82 S. E. 767). See also *Holmes* v. *Southern Ry. Co.,* 145 *Ga.* 173 (2) (88 S. E. 924), in which the Supreme Court was equally divided upon the question in regard to a child about two and a half years of age.

(*a*) The decision in *Fuller* v. *Inman,* supra, is in full accord with the decisions of the Supreme Court on this question, and the request to review and overrule it cannot be entertained.

8. "It is essential to the maintenance of [a parent's] action for the homicide of his child, that the former should, at the time of the homicide, be to a material extent dependent upon the latter for a support, and that the child should then be actually contributing thereto." *Smith* v. *Hatcher,* 102 *Ga.* 158 (1) (29 S. E. 162); *Central of Ga. Ry. Co.* v. *Henson,* 121 *Ga.* 462 (3) (49 S. E. 278).

(*a*) The assignments that certain charges were erroneous for omitting this principle are without merit, for the principle was implied even though not expressed in the excerpts complained of. Furthermore, the jury were elsewhere instructed "but in order for a mother to recover, it must appear that at the time of the homicide she was dependent either wholly or partially upon the child, and that the child contributed materially or substantially to her support."

(*b*) Instructions of this character were not subject to the exception that they were not warranted by the evidence.

9. The evidence authorized the finding that at the time of the homicide the mother was dependent in part upon the child and that the child was contributing substantially or materially to her support; also that the negligence of the defendant was the proximate cause of the child's death.

10. " Assignments of error must specifically point out why the ruling or decision complained of is error. A general averment of error in the exclusion of stated evidence is therefore insufficient. *Wall* v. *Hawker Pottery Co.*, 27 *Ga. App.* 255 (2) (108 S. E. 134)." *City of LaGrange* v. *Cotter*, 29 *Ga. App.* 577 (4) (116 S. E. 204). This applies especially to the ground of the defendant's amended motion for a new trial based upon the exclusion from evidence of the divorce and alimony proceedings between the plaintiff and her husband, the child's father.

11. The court charged the jury as follows: " The defendant contends that its car was being moved on West Broad street, going north; that there were children playing on West Broad street; that one crossed the line of track, another attempted to cross and immediately in front of a moving car; that the child is young — admitted to be six years and a few months old — and the contention on the part of the defendant is that it exercised all ordinary care and diligence to prevent the accident — to prevent the homicide." It is assigned that this incorrectly stated the real contentions of the defendant, to wit, " that the plaintiff's minor child attempted suddenly, and without notice to the motorman in charge of the car. to cross the track suddenly and without notice, running into the side of a moving car." The motorman, a witness for the defendant, testified: " This little boy was running in front of the car. He ran right in front of the car, and I  .  .  . did all in my power to stop the car before it struck the boy." " While I was applying the brakes this child got on the tracks; I couldn't possibly stop the car before the boy was struck." " When I first saw the boy he was 5 or 8 feet from the car,  .  . running into the car." No witness for the defendant gave a materially different version of the occurrence. The charge was correct in its reference to the street or location of the homicide. The street was not shown to have been crowded. The defendant's answer contained only a general denial of the plaintiff's allegations. We therefore cannot say that the charge was a misstatement of the defendant's contentions.

12. " In a suit for a negligent tort, where the question of diminution of damages by reason of negligence on the part of the person injured is not raised by the pleadings of either party, it does not constitute reversible error for the court, in the absence of a request, to omit to charge on that subject, where he has charged fully as to the effect of the negligence of the injured person upon the right to recover at all; although it is the better practice to charge on the subject of comparative negligence and diminution of damages where the evidence authorizes it." *Powell* v. *Berry*, 145 *Ga.* 696 (5) (89 S. E. 753, L. R. A. 1917A, 306); *Western & Atlantic R. Co.* v. *Watkins*, 14 *Ga. App.* 388 (7) (80 S. E. 916); *Central of Ga. Ry. Co.* v. *Hill*, 21 *Ga. App.* 231 (2) (94 S. E. 50); *Western & Atlantic R. Co.* v. *Jarrett*, 22 *Ga. App.* 313 (3) (96 S. E. 17); *Georgia Ry. & Power Co.* v. *Freeney*, 22 *Ga. App.* 457 (2), 459

(97 S. E. 575) ; *Savannah Electric Co. v. Crawford*, 130 *Ga.* 421 (1) (60 S. E. 1056) ; *Louisville & Nashville R. Co. v. Smith*, 136 *Ga.* 455 (2) (71 S. E. 774) ; *Alabama &c. R. Co. v. Brown*, 138 *Ga.* 328 (7) (75 S. E. 330) ; *Western & Atlantic R. Co. v. Smith*, 145 *Ga.* 276 (5) (88 S. E. 983)     While it is contended, in ground 9 of the motion for a new trial that the contributing negligence was by the mother, this principle is applicable as against the movant.

13. Assuming (but not deciding) that a mother, who is charged with the custody and control of her child of the age of six years and two months and who sues for its negligent homicide, under the provisions of section 4424 of the Civil Code, if herself negligent in permitting the child to go unattended upon the public street where street-cars were operated, by which it was killed, would be responsible for a standard of care or conduct in the child such as should be exercised by an ordinarily prudent adult, or by the child had it been attended and controlled by an ordinarily prudent adult, the existence or non-existence of such negligence on her part would be a question for determination by the jury, and only a collateral issue in the case; and it therefore would afford no cause for a new trial that the court, in the absence of a timely written request, failed to instruct the jury that in such circumstances she would be reponsible for such a degree of care in the child. Moreover, there is no evidence that the mother was negligent in the respect indicated, and it is not so charged in the assignment of error.

14. The plaintiff recovered for the homicide of her child. The court did not err in overruling the defendant's motion for a new trial.

DECIDED JUNE 25, 1923.

Action for damages; from Chatham superior court — Judge Meldrim.   September 10, 1921.

BELL, J.   1-11.   The plaintiff, suing under the Civil Code (1910), § 4424, recovered for the alleged negligent homicide of her child of the age of six years and two months. The defendant excepted to the overruling of its motion for a new trial. The case is sufficiently disposed of by the headnotes, save as to the contentions, under the general grounds, that the evidence did not show that the mother was dependent or that "this particular child was capable of and did make substantial contributions to its mother's support," and with the exception of two assignments of the motion for a new trial, hereinafter to be stated.

For the purpose of a consideration of these questions, we will set forth the testimony of the plaintiff in full: " I live in Savannah and have lived here all my life. Lewis F. Thomas Jr. was my son. He is now dead. He was six years and two months old when he died. He died on February 15, 1919. He died at West Broad and Anderson streets. I was at home at the time, — 512 ½ West Anderson street — about the fourth door from the

corner, or about a quarter of a block, from the place where the child was killed. I was living with Mrs. Mock. The boy had been to the store and when he returned to the house he asked for a nickel to get marbles; a nickel was given to him, and he was going for some marbles across to the fruit stand. That was the last I saw of him before he was killed. Two other little boys — Bernard Mock and Freddie Mock — went with him. These two little boys are now in Brunswick. They have recently gone to Brunswick. Bernard Mock brought the information to me that my son had been hurt. I asked Mrs. Mock to go to him because I was not at that time dressed; she hurried, and I followed her at once, and when I got to the corner she said he was dead, and some men carried him to the house. I saw him under the car, but I did not go up to him. Both sides of his head was crushed in, and he still had the nickel to buy marbles, still grasped in his hand.

" Prior to this time, I had been working. I had stopped working a couple of weeks before he got killed. I had been earning $15 a week. He had a very bright mind; he didn't forget anything; his physical condition was fine; he was healthy, strong and active. Myself and husband are poor people. At the time this thing happened we were not living together; we were separated, but on friendly terms. Before he died I got a divorce from him. He died a year in March. In December before his death I got a divorce from him. The divorce was granted to me.

" As to the services this little boy rendered me, or how he helped me: He would go to the store to buy things for me; he would light the stove for me in the morning, and he would bring up wood. In cold mornings I would lie in bed, and he would go and light the stove, and come to the bed for me. When I sent to the store he would buy the things I sent him for. He would buy meat, bread, oil, and anything else I sent him for; he would dry the dishes at home; he tried to do anything that I would let him do; he would help to clean windows; he was anxious to do these little things; he would bring up wood and coal; I used an oil stove, but he would help the Mock boys to bring up wood and coal; he washed dishes. The value of his services to me was between $15 and $20 a month. If I had been compelled to pay a boy or a woman to do such services as my boy rendered me, I would have

to pay from $3 to $5 a week. My boy helped me to make a living by doing these little things I have referred to.

(On cross-examination.)

"I have one child. I was married in 1910. I worked for two years before I married. I was working at the ruling machine at Braid & Hutton. My husband and myself separated a few months before the baby died. At the time of this killing we were not living together. When I went to Mr. Oliver to bring this case I did not tell him I was not living with my husband; he was not supposed to know whether I was living with him. He did not know whether we were separated or not. I notice in that petition there that the services of the boy is estimated at ten dollars per month; of course the older the boy became the more he would be able to earn. The boy had been with me two weeks before he was killed. Prior to that he had been to Bethesda for three months. I put him in Bethesda. I did that because during the time he was at Bethesda I was working, and was afraid to leave him in the street. I had some money. My brother was going to help me. I was fixing to have a soft-drink place, so that I could have the boy with me. This child was taken out of Bethesda about two weeks prior to this occurrence. I wanted him to be with me. He was dissatisfied out there; every time I went out there he would cry. I did not get him out of Bethesda for the purpose of turning him over to his uncle, to be supported by his uncle." — Q. "Didn't you make the statement to Mr. Burroughs, superintendent of the Bethesda Home, at the time you got this child, in this county, that you wanted to get the child out for the purpose of turning him over to his uncle, to be supported by the uncle?"

A. "That was my brother, and he was going to live with me — my single brother; he was not to be turned over to any one; I was supposed to look after him myself." "At the time of this unfortunate occurrence I had been working down on the bay, but I had quit working there before I took the boy out of Bethesda. It was about two weeks after I got him this thing happened."

(On redirect examination.)

"I had quit working because I was going to sell soft drinks and milk, and my little boy would help me to do that. I was going to keep this place so as to have my baby with me and live together.

(On recross examination.)

"There were two suits brought; I brought the first one, and just before he died he brought another suit."

Under the authorities cited in the headnotes, we have no hesitancy in holding that the evidence was sufficient to support the averments of dependency and contribution.

12. The plaintiff alleged in paragraphs 10 and 11 as follows: "10. Petitioner shows that on said February 15th, 1919, her said son was six years of age, and, while strong, healthy, active, and intelligent, was of immature experience and not able to exercise that degree of care and caution which an adult might have exercised. But, notwithstanding his tender years, her son was in the exercise of all ordinary and reasonable care and caution, and but for the negligent acts and conduct of the said defendant company her son would not have been killed." "11. Petitioner shows that her son's death is due entirely to the fault and negligence of the Savannah Electric Company, its servants, agents, and employees, as follows, to wit," specifying the acts.

These averments and all others of the petition, except that it was a corporation with an office and place of business in Chatham county, the defendant answered with a general denial, and pleaded nothing further.

The two grounds of the motion for a new trial dealt with in headnotes 12 and 13 were as follows: "9. Because the court omitted to submit to the jury a substantial defense of the defendant, to wit, the contributory negligence of the plaintiff in permitting a child of tender years to go unattended upon a crowded street and upon street-car tracks." "10. Because the court charged the jury as follows: 'When a defendant is guilty of negligence (and I do not mean to say that this defendant was or was not guilty of negligence), then it becomes the duty of all other persons to avoid, if they can, injury to themselves by the exercise of ordinary care on their part. If a person who has been injured after the alleged negligence has commenced can avoid the injury to himself by the exercise of ordinary care on his part, it is his duty to avoid that injury. In this case it is alleged and admitted that the child was six years and two months of age. Now the degree of care which a young child is to exercise is a matter for you to determine, due regard being had to the age of the child and

its mental condition and physical condition, as far as the same has been disclosed by the evidence.' This was misleading. It was inappropriate and not adjusted to the evidence. This was not a suit by the child; it was a suit by a parent. The parent was charged with the duty of exercising ordinary care, and could have no benefit of the incapacity of a child of tender years whom she had permitted to wander, unattended, upon a crowded street upon street-car tracks. Upon the other hand, she was charged with such incapacity."

It is doubtful if either of these grounds could be considered sufficient as assignments of error. The first states merely " that the court omitted to submit to the jury a substantial defense," etc., without alleging that the omission was erroneous, while the other, though criticising an instruction, fails likewise to say that it was error, if both are not imperfect for other reasons. But since we think that an affirmance should result, even conceding the technical sufficiency of these grounds, we will deal with them upon their merits, to the best of our understanding of their import.

Upon the authority of *Atlanta &c. Railway Co.* v. *Gardner,* 122 *Ga.* 82 (7) (49 S. E. 818), it is contended that the pleadings were sufficient to authorize these exceptions. Whether this be correct as to ground 10, it is not so as to ground 9, there being no request to charge. The decision in that case had reference to the complete defense, claimed by the defendant therein, that the plaintiff could have avoided the consequences of the defendant's negligence by the exercise of ordinary care, and neither is that case nor any case following it authority in regard to the circumstances under which, without request, the court should give instructions upon the subject of " contributory negligence."

Dealing first with ground 9: " The common-law rule that contributory negligence by a plaintiff prevents a recovery has been changed in this State by the code." *City of Ocilla* v. *Luke,* 28 *Ga. App.* 234 (2) (110 S. E. 757). "While at common law, if the negligence of the plaintiff contributed to the injury, he could not recover, in this State the liability of railroad companies for injury done by them to persons or property has been modified so that the law governing such liability is as follows: Under the provisions of section 2781 of the Civil Code, no person shall recover damages from a railroad company for injury done to himself or

his property, where the same is done by his consent or is caused by his own negligence. If the complainant and the agent of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him. The doctrine usually referred to as that of contributory negligence is not the law of this State, inasmuch as that term, properly used, expresses not such negligence as would diminish, but only such negligence as would preclude a recovery. The doctrine which here obtains can be and is more accurately and properly designated as that of comparative negligence. *Western & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708, 712 (39 S. E. 306, 54 L. R. A. 802); *Christian* v. *Macon Ry. & Light Co.,* 120 *Ga.* 314 (47 S. E. 923); *Ga. & Fla. Ry. Co.* v. *Newton,* 140 *Ga.* 463 (79 S. E. 142); *Louisville & N. R. Co.* v. *Stafford,* 146 *Ga.* 206 (91 S. E. 29)." *Central Railway Co.* v. *Larsen,* 19 *Ga. App.* 413, 417 (91 S. E. 517, 520). See also *Savannah Electric Co.* v. *Crawford,* 130 *Ga.* 421 (2) (60 S. E. 1056). We will take it, therefore, that the defendant is complaining that the court did not instruct the jury upon the law in respect to comparative negligence and the reduction or mitigation of damages in proportion to the amount of default, if any, attributable to the planitiff.

Even if we assume that the evidence would have authorized an inference of negligence by the mother, contributing to the injury (in permitting the child to go unattended upon the street), the pleadings did not necessarily raise such a question; and, the law of negligence, as it affects the plaintiff's right to recover and the right of the defendant to have a judgment rendered *in its favor,* having been substantially and fairly submitted, the judgment overruling the motion for a new trial will not be reversed by this court because the trial judge failed to charge the law applicable to comparative negligence *affecting the amount of the recovery,* when there was no request to charge upon the subject. *Savannah Electric Co.* v. *Crawford,* supra. Of the cases cited in the 12th headnote, see especially *Western & A. R. Co.* v. *Jarrett, 22 Ga. App.* 313 (3) (96 S. E. 17).

The pleadings being insufficient, under the authorities, necessarily to raise the issue of contributory negligence by the child itself, they certainly did not as to the plaintiff mother. On the

question of the mother's negligence in fact, see the discussion at the conclusion of the next division of this opinion.

13. We come now to a consideration of ground 10. In the brief of counsel for the plaintiff in error " it is cheerfully conceded that in an action brought by a child, its parent's negligence cannot be imputed to it, and that a child is only required to exercise that degree of care which a child of that age would be required to exercise, but in the case of a parent suing for an injury to a child no such rule prevails, and in such a case the child must exercise the same degree of care as an adult person." See Civil Code (1910), § 3475. But, to quote their own words further, it is insisted that " when a parent permits the child to go upon a street, in so far as the rights of the parent are concerned the conduct of the child is bound to be such as it would have been if directed by an adult person in charge exercising reasonable care and diligence."

It is contended further that " the error of the court was fundamental. It gave the defendant [plaintiff?] the benefit of the immaturity of the child when that immaturity should have been charged to her. It deprived the plaintiff [defendant?] of its right to have the child's conduct viewed in the light of a person exercising ordinary care, and placed upon it the burden of having the child exercise only that degree of care which a child of its tender age was able to observe. In other words, it made the child's immaturity an asset to its mother, when it should have been a liability."

We are aware of the principle announced in numerous cases, and so aptly stated in *Atlanta &c. Ry. Co.* v. *Gravitt,* 93 *Ga.* 369 (3) (20 S. E. 550, 26 L. R. A.553, 44 Am. St. Rep. 145), that " one whose negligence has brought about a calamity to a little one whom he is legally bound to watch over and protect from injury can not be allowed to profit by the result of his own inexcusable, if not criminal, neglect and misconduct. . . The object of the rule is not to shield a negligent defendant from the penalty of his wrongdoing, but merely to deny aid to a plaintiff who, though equally guilty, nevertheless comes in a court of justice and demands the fruits of his own unpardonable neglect of both a moral and a legal duty;" and we have no disposition either to question it or to avoid the application of it where it should be legally applied. See also *Stamps* v. *Newton County,* 8 *Ga. App.* 229 (1)

(68 S. E. 947); Vinnette *v.* Northern Pacific Railway Co., 47 Wash. 320 (91 Pac. 975, 18 L. R. A. (N. S.) 328); Nashville Lumber Co. *v.* Busbee, 100 Ark. 76 (139 S. W. 301, 38 L. R. A. (N. S.) 754 (1)); Dickinson *v.* Stuart Colliery Co., 71 W. Va. 325 (76 S. E. 654, 43 L. R. A. (N. S.) 335); Wiswell *v.* Doyle, 160 Mass. 420 (35 N. E. 107, 39 Am. State Rep. 453); 8 R. C. L. 783. It certainly cannot be said as a matter of law that the plaintiff was negligent in allowing her child of the age of six years and two months to go upon the street unattended, even if it could be found by a jury as a question of fact. Shearman & Redfield on Negligence, §§ 83, 73 (a), and citations. While the evidence authorized the inference of the defendant's negligence, or else the verdict would not stand, the mother was not required to anticipate that it would be negligent. 25 R. C. L., 1272, § 129. The mother was in her home and had allowed the child to go across the street to purchase some marbles. She did not know of the defendant's negligence and could not have known of it by the exercise of ordinary care until after the occurrence, not being required to anticipate it. If she had been with the child or could by the exercise of ordinary care have known of the defendant's negligence in time to have avoided the injury, different questions would be presented. *Stamps* v. *Newton County,* supra. In the *Gravitt* case the child was led as a trespasser into a dangerous place (upon a railroad trestle) by one in whose charge it had been placed by its father, and if the father had been suing for its death he would have been chargeable with the negligence of the custodian. In that case ordinary care in the custodian would have warned him of the danger and averted the consequences. In the instant case the child was upon a public street. It certainly was not a trespasser. The railway company did not have the exclusive privilege of the street.

It has been held by this court that " a parent can not be said to be guilty of negligence merely because he permits an eight-year-old boy to ride a tricycle in a city, upon a public street of sufficient width to make it apparently safe, under ordinary circumstances, for the thoroughfare to be thus used. There was no evidence in the present case which authorized an instruction upon the theory that the parent of the boy was guilty of negligence, and such an instruction was sufficiently prejudicial to demand the granting of

a new trial." *Cohn* v. *Cody Sales Stable Co.,* 14 *Ga. App.* 234 (2) (80 S. E. 661). And also, in a case very similar to the one at bar, it was held that "there was no error in the failure of the judge to submit to the jury the defense that the plaintiff was negligent in permitting the child to go unattended on the street. The fact that the mother of a six-year-old boy sent him unattended to make a purchase for her, and that while performing this duty he was killed by a street-railway car, by reason of the negligence of an incompetent servant of the railway company operating it, can, in no way affect the mother's right to recover the present cash value of the services of the son until his majority. It can not be said that the mother, in sending her six-year-old son unattended to a bakery to make a purchase, was guilty of such negligence as would prevent a recovery, where the evidence disclosed that the child was physically and mentally well developed and capable of performing such duty. There was no timely written request to charge the jury upon this subject." *Savannah Electric Co.* v. *Dixon,* 18 *Ga. App.* 314 (5) (89 S. E. 373).

But waiving these rulings for the present (although the cases were cited by the defendant in error, and the plaintiff in error has not insisted they were inapplicable, or in any way referred to them), could the defendant, under the circumstances, have claimed more than that the negligence of the mother, if existing, was only a contributing cause, involving merely the question of comparative negligence, and bringing the contention therefore under the ruling of the preceding division of this opinion? But more specifically still, the action being by the mother, and not by the child nor for its estate, does the fact that the parent permitted the child to go alone upon the street require, as contended by the plaintiff in error, that " in so far as the rights of the parent are concerned, the conduct of the child should be such as it would have been if directed by an adult person in charge exercising reasonable care and diligence," or that as to the care of the mother the child's conduct should be measured by the standard of care of an ordinarily prudent adult, rather than by the rule that " due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation " (Civil Code of 1910, § 3474)? In other words, she having sent it or allowed it

to go, is she, in the action for her own benefit, to be charged as if she had gone with it, or did it so represent her that its actions are imputable to her, measured by the standard of herself as an ordinarily prudent adult? Surely not, unless she were careless or negligent in allowing it to go. The code section above quoted and the statute under which she is suing do not so restrict her, nor does any other law of which we have any knowledge. None to that effect has been cited. In the case of Wiswell *v.* Doyle, 160 Mass. 43 (35 N. E. 107, 39 Am. State Rep. 453), relied on by plaintiff in error, the Supreme Court of Massachusetts, in reviewing the refusal of *requested* instructions, said: "In order to test the correctness of this refusal, let it be assumed that the mother was *careless* [italics ours] in allowing her children to go upon the .street, and that the children were both *too young to have any* [italics ours] judgment or discretion of their own. Under these circumstances the plaintiff must be held to show that the child did nothing upon the street which would be deemed dangerous or careless if its movements had been directed by an adult person in charge, who was of ordinary care and reasonable prudence."

Assuming that this rule should be applicable in Georgia, then the assignment is not good unless there was negligence in the mother; and *in the assignment it is not charged that she was negligent or that the defendant ever so contended.* We have seen already that she could not be said as a matter of law to have been negligent in the particular under consideration, even if a jury might have so found as a matter of fact. Thus the court in no event could have given the rule as desired by the defendant, without leaving it to the jury to determine if they would apply it, depending upon whether they found that the parent was negligent. Undoubtedly the court should also at the same time have instructed the jury to apply the standard of care to be required of a child as stated in code section 3474, unless they found that the mother was negligent. (This rule was given in charge and was abstractly correct.) We demonstrate, therefore, that the applicability of the rule as sought to be invoked by the defendant depended upon the collateral issue or matter of the negligence of the parent. "In the absence of an appropriate request it is not error for the trial judge to omit specific reference to particular points or phases of the evidence confirmatory of the contentions of either

of the parties. Before the judge is required to direct the attention of the jury to a fact which a party may deem to be material, though only collaterally involved, a ruling upon its materiality must be invoked." *Bishop* v. *Georgia National Bank,* 13 *Ga. App.* 38 (4) (78 S. E. 947) ; *Branch* v. *Bishop,* 135 *Ga.* 110 (2) (68 S. E. 1021), and cases cited. " The failure to give instructions to the jury not demanded by the evidence will, in the absence of a written request to so charge, in no event be cause for a new trial." *Cooper* v. *Nisbet,* 119 *Ga.* 752 (3) (47 S. E. 173). If the defendant had desired a charge of the rule now insisted upon, the same should have been requested, even as was done in the Massachusetts case of Wiswell *v.* Doyle, supra.

Furthermore, as we have seen, the charge as given correctly stated a rule which was applicable from the plaintiff's side of the case, unless it could be said as a matter of law (and it cannot) that the evidence demanded the conclusion that the mother was negligent. It would seem that, taking the exception literally, the plaintiff's viewpoint should have been ignored, and a rule given instead which would have been applicable only under the defendant's contention. The most that could legitimately have been expected was that the court should *also* have charged in accordance with the contentions of the defendant. So, unless upon the question we consider the defendant to be asking for all and allowing to the plaintiff nothing (an imputation we would stoutly avoid), the gravamen of the assignment is that the charge given was error because another charge was not given in connection therewith; and it has been repeatedly held that " A complete, accurate, and pertinent instruction is not within itself erroneous because it fails to embrace an instruction which would be appropriate in connection with the instruction given. *Lucas* v. *State,* 110 *Ga.* 756 (36 S. E. 87) ; *Johnson* v. *State,* 150 *Ga.* 67 (3 *a*) (102 S. E. 439) ; *Shelton* v. *State,* 150 *Ga.* 71 (2) (102 S. E. 355) ; *Wilson* v. *State,* 150 *Ga.* 285 (103 S. E. 682) ; *Green* v. *State,* 150 *Ga.* 121 (102 S. E. 813) ; *Bowden* v. *State,* 151 *Ga.* 336 (4), 339 (106 S. E. 575)." *Peeples* v. *Rudulph,* 153 *Ga.* 17 (2) (111 S. E. 548).

For the purpose of the foregoing discussion we have assumed that the mother might have been found by the jury to have been negligent in permitting her child to go upon the street unattended, but we can not conclude without discussing this question to some

extent upon its merits. As a final reason why we do not think error is shown in the assignment under consideration, there was no evidence sufficient to establish the basic premise that the mother was negligent. Such negligence could not be inferred merely from the fact of the child's age. No unusual condition in the traffic existed, and the place where the injury occurred does not appear to have been in a congested district. It is common knowledge that children of the age of six years do go upon the streets unattended. In the absence of circumstances of more than ordinary risk, it was the privilege of the mother to send her child out upon a public thoroughfare which the public was entitled to use. It has long been expected, under the laws of this State, that children of the age of six years should go to school. We do not think that the law contemplates that parents will be negligent in sending them unattended. Though the plaintiff's child was not going to school at the time in question, these observations will illustrate the matter of the mother's negligence in the particular instance. Of course, the mother might in some cases be negligent in permitting her child to go upon the streets unattended, depending upon the age of the child, the conditions of the traffic, and other circumstances, but in our judgment there is no sufficient evidence in the present record to warrant such a finding.

There are so many well-settled principles under which this assignment is without merit that it is unnecessary to determine the correctness of the rule asserted in the brief of the learned counsel in reference to the accountability of the mother for the higher degree of care to be required of a child where the mother is suing for her own benefit for its homicide and may have been negligent in the particulars mentioned.

14. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*