21358. WESTERN & ATLANTIC RAILROAD *v.* MICHAEL.

DECIDED DECEMBER 16, 1931. REHEARING DENIED JANUARY 12, 1932.

*Walton Whitwell, Mitchell & Mitchell,* for plaintiff in error.
*J. A. McFarland, R. Carter Pittman,* contra.

Luke, J.  Manson Michael brought suit against the Western & Atlantic Railroad for loss of services and for certain expenses due to the killing of his son by the railroad.  The defendant demurred to the petition, the demurrer was in part overruled, and the defendant filed exceptions pendente lite, and in its·final bill of exceptions assigns error on the overruling of the demurrer and on the exceptions pendente lite.  The trial of the case resulted in a verdict for the plaintiff, and the defendant made a motion for a new trial, which was overruled; and on this ruling also the defendant assigns error.

█  The petition and the demurrer in this case are substantially and almost identically the same as those in the case of *Western & Atlantic Railroad* v. *Michael, 43 Ga. App.* 703 (160 S. E. 93), in which this court held that "the petition set out a cause of action, and was good as against the general and special demurrer."  There is nothing in the instant case that renders this ruling inapplicable; and the court did not err in overruling certain paragraphs and subparagraphs of the demurrer to the petition in the instant case.

█  While there ·was some conflict in the evidence, there was ample and in most instances abundant evidence to show the following facts, which the jury, as indicated by their verdict, accepted as true, as they were authorized to do.  The plaintiff's son who was killed was twelve years of age; on the occasion of his death he had left his father's home to go to school; on the way to school he was proceeding along the right of way of the defendant, intending to cross the track at an opportune time; he was on a side-track or passing track of the defendant; this was the nearest way to school and the least dangerous, the child having only two tracks to pass this way and three on another route, besides automobile traffic; an overhead bridge was closed on account of repairs; on the main track of the defendant was a freight-train coming toward the child; on the passing track was a passenger-train coming behind the child and going in the same direction as the child, which ran over him and killed him; the passenger-train was traveling at the rate of about ten miles per hour, in a comparatively noiseless manner; the freight-train was traveling much faster and making so much noise that the child, who was watching the freight-train with a view of crossing the ·track when it passed, could not hear the approach of the passenger-train; the passenger-train did not blow the whistle, ring the

bell, or give any warning of its approach to the child; the killing occurred in an incorporated town, the child at the time he was killed being on a pathway that had been used by pedestrians for more than thirty years; the employees of the railroad knew that the pathway was used generally by pedestrians; there was nothing to prevent the employees of the railroad and operators of the passenger-train from seeing the child, had they been looking ahead; the whole crew of the defendant's employees on the passenger-train were interested in and looking at the passing freight-train, and consequently did not see the child on the track ahead of them; the engineer was not looking ahead, as, according to his own testimony, he was looking at the passing freight-train; and just as he turned his head back he received a violent stop signal, and according to the testimony of another witness, he was reading a green paper; the porter was sitting on the pilot of the passenger-train looking at the freight-train as it passed and waving at a member of the crew of the freight-train; the porter's attention was not attracted until a portion of the child's body hit him on the leg as he was riding on the front of the engine; the place of the accident could have been seen by the operators of the passenger-train several hundred feet before the engine reached it, and the passenger-train, going only about ten miles an hour, could have been stopped in fifteen or twenty feet.

It is evident from the foregoing facts that, had they been looking ahead, the engineer could have avoided the injury by a sharp blast of his whistle, even though he was in a town, and thus warned the child, or he could have stopped his train; or the porter, who was sitting on the pilot of the engine, could have shouted at the child, or he could have stepped off the pilot, at the slow rate of speed the train was traveling, and run ahead of the train and pulled the child out of danger. The engineer and the fireman testified that it was the fireman's duty to get the number of the passing freight-train; but the porter testified it was his duty, and the flagman testified it was his duty, and the record shows that the engineer, the fireman, the porter, the flagman, and the conductor were all looking at the freight-train instead of ahead on the track on which they were running. Even had each one of them been assigned the duty of getting the number of the passing freight-train, the record shows that it would have taken but an instant to glance up and see the number, which was in large figures on the front and side of

the freight-engine. Furthermore, the record shows that the number could have been gotten before the train reached the place of the accident.

Plaintiff in error, in arguing the general grounds of its motion for a new trial, insisted that the child should have turned his head around, and sought to have this court, rather than the jury, settle the question of fact as to ordinary care and diligence. It must be borne in mind, (1) that the issue is not whether it was possible for the deceased to have ascertained the approach of the passenger-train to the rear of him, but whether ordinary care and diligence would have required him to ascertain it under the circumstances, he being only twelve years old, and being not on the main line but on a side-track, and in a place generally used by pedestrians, and the passenger-train traveling in a comparatively noiseless manner, and the great noise of the freight-train drowning out the little noise of the passenger-train behind him, and he having no warning of the approach of the passenger-train; (2) that a child 12 years of age is not required to exercise the same degree of care and diligence as an adult; (3) that the question of whether the child exercised ordinary care and diligence under the circumstances was an issue of fact for the jury, and not one to be determined by this court where there was evidence to support the finding of the jury; and (4) that the question as to the care and diligence of the railroad was also one for the jury. There was abundant evidence that the place where the deceased was killed had been used by school children and pedestrians generally for several years, and that the employees of the railroad company knew this; and "where a number of persons habitually, with the knowledge and without the disapproval of a railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of this custom, are bound, on a given occasion, to anticipate that persons may be upon the track at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence." *Bullard* v. *Southern Railway Co.,* 116 *Ga.* 644 (45 S. E. 39) ; *Ashworth* v. *Southern Railway Co.,* 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592) ; *Atlantic Coast Line Railroad Co.* v. *Adams, 7 Ga. App.* 146 (2) (66 S. E. 494) ; *Williams* v. *Southern Railway Co.,* 11 *Ga. App.* 305 (75

S. E. 572). The act of 1918 (Ga. L. 1918, p. 213, sec. 4; 8 Park's Supp. 1922, § 2677 (d)) provides in part that "nothing in this proviso contained shall be held to relieve the said engineer or the said railroad company of his or its duty of keeping and maintaining a constant and vigilant lookout along the track ahead of its engine while moving within the corporate limits" of a city, town, or village.

In the case of *Southern Railway Co.* v. *Brock,* 132 *Ga.* 860 (64 S. E. 1083), Brock, a minor about 18 years of age, sued for damages resulting from being run over by an engine of the defendant company. At the time of the injury he was walking on the track of the defendant company about 253 yards before reaching a public crossing, and at a place in the limits of an incorporated town, and where the tracks and road-bed and right of way were used by the public as a passway within the knowledge of the defendant company, its engineers and employees. It was alleged that the exercise of ordinary care would have charged the defendant with knowledge that the tracks were likely to be occupied by pedestrians and that the track was straight for such a distance that the engineer saw or ought to have seen the plaintiff, and could have prevented the injury by the use of ordinary care. The jury returned a verdict for $20,000 against the defendant company, and the Supreme Court affirmed the judgment. All the foregoing facts are applicable to the instant case except that the deceased in the instant case was nearer a public crossing, and was only twelve years of age instead of eighteen, which required a less degree of care and diligence on his part. In the case of *Morrow Transfer Co.* v. *Heard,* 11 *Ga. App.* 187 (74 S. E. 1006), the victim of the accident was laboring under the infirmity of old age instead of youth, and the driver of the transfer wagon was looking in another direction instead of the way he was traveling, as was the engineer, and in fact all the crew in the instant case. In the *Heard* case this court said the driver was guilty of gross negligence in looking in another direction, apparently indifferent to the possibility of injury to pedestrians; and awarded ten per cent. damages for bringing up the case for delay only. See also *Seaboard Air-Line Ry. Co.* v. *Parriett,* 33 *Ga. App.* 576, 577 (127 S. E. 815); *Atlantic Coast Line R. Co.* v. *Burroughs,* 20 *Ga. App.* 198 (2) (92 S. E. 1010); *Seaboard Air-Line Ry.* v. *Deal,* 20 *Ga. App.* 246 (92 S. E. 947); *Binion* v. *Central &c. Ry. Co.,* 12 *Ga. App.* 663 (78 S. E. 132); *Western & Atlantic Railroad* v. *Meigs,*

74 *Ga.* 857, 866, 867. It will be seen from the foregoing authorities that the questions of ordinary care and diligence of the deceased and of the defendant company were questions of fact for the jury.

All the special grounds of the motion for a new trial are based on the failure or refusal of the court to charge specified principles of law. Attached to the motion for a new trial is a note of the trial judge, in which he certifies that "movant submitted to the court 57 written requests to charge, consisting of 18 pages of single-space typewritten legal-cap paper," and that among these requests to charge were the following, which were complied with: "Request No. 8. I charge you that it is the imperative legal duty of a father to guard and shield his minor child of tender years from injury; and I charge you if you find that the plaintiff in this case failed to exercise ordinary care in the performance of this duty, and that such failure on his part was the cause of the injury, there can be no recovery and your verdict must be for the defendant." "Request No. 42. I charge you that the defendant has available four defenses, either of which, if established by a preponderance of the proof, is a complete defense and bars any recovery. The different defenses available are as follows: 1. That defendant and its employees exercised all ordinary and reasonable care and diligence to avoid the injury. 2. That the killing of the deceased was proximately caused by his own negligence. 3. That the deceased by the use of due care on his part could and should have avoided the injury to himself. 4. That if both the deceased and the defendant company were negligent in causing the death of said deceased, the negligence of said deceased was equal to or greater than the negligence of the defendant and its employees. The court instructs the jury that if defendant establishes, by a preponderance of the evidence, either of said four defenses, the plaintiff would not be entitled to recover any damages of defendant." In addition to the foregoing instructions as to available defenses of the railroad, given according to the defendant's request, the court gave numerous other instructions favorable to the defendant, and the charge was, as a whole, entirely fair to the defendant. Indeed the instructions of the court as to the failure of the plaintiff to exercise ordinary care in guarding his minor child from injury may have gone further than was required by the pleadings and the evidence. In its answer to the petition the defendant alleged "that the accident was caused

by the deceased's negligence *solely*." This would exclude any negligence on the part of the father of deceased, the plaintiff. This allegation that the accident was caused by the "deceased's negligence solely" is not stricken by the pleader, nor is the amendment to the answer, setting up negligence on the part of the plaintiff, offered in lieu of said original allegation; and we therefore have a conflict in the allegations of the defendant, in one instance the deceased's negligence *solely,* and in the other the negligence of the plaintiff also. Furthermore, there was evidence to the effect that the child went to school the nearest and safest way, and that the overhead bridge was closed for repairs at the time of the accident. The evidence shows that the deceased was a bright boy, and there is nothing to show that he was so mentally or physically incapacitated as to require some one to accompany him to school. "It has long been expected, under the laws of this state, that children of the age of six years should go to school. We do not think that the law contemplates that parents will be negligent in sending them unattended" *Savannah Electric Co.* v. *Thomas, 30 Ga. App.* 419 (118 S. E. 481). The court charged the jury, as requested, that if the negligence of the deceased was equal to or greater than the negligence of the defendant, the plaintiff could not recover; and this charge was amply favorable to the defendant, in view of the pleadings and the evidence. See *Western & Atlantic R. Co.* v. *Jarrett, 22 Ga. App.* 314 (3) (96 S. E. 17); *Savannah Electric Co.* v. *Crawford, 130 Ga.* 421 (60 S. E. 1056).

This court has no authority to take the determination of a question of fact from the jury where the evidence makes an issue thereon. The question of the diligence and negligence of the deceased, the plaintiff, and the defendant was fairly submitted to the jury, and their finding in favor of the plaintiff was amply authorized; no reversible error of law is shown; and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*