LOUISVILLE & NASHVILLE RAILROAD CO. *v.* CLINE.

1. The petition in this case stated a cause of action good as against a general demurrer.

2. Whether, under the terms of a lease of the Western & Atlantic Railroad, the Louisville & Nashville Railroad Company can legally operate trains over the tracks of the Western & Atlantic Railroad Company is not a question that can be raised in a suit against the L. & N. Company, based upon the alleged tortious homicide of a child of the plaintiff, to which neither the State nor the Western & Atlantic Railroad Company is made a party.

(a) Except as indicated in the second headnote, the grounds of special demurrer were without merit.

SEPTEMBER 26, 1911.

Action for damages. Before Judge Fite. Bartow superior court. July 16, 1910.

*Neel & Neel* and *D. W. Blair,* for plaintiff in error

*Colquitt & Conyers,* contra.

BECK, J. The father of Lillie May Cline, a twelve year old child, brought suit against the Louisville & Nashville Railroad Company to recover damages for the killing of said child by a fast moving locomotive and train while she was attempting to rescue a six year old boy companion and playmate, who had fallen upon the track in an effort to get out of the way of the train when he became aware of its approach. The defendant demurred generally and specially to the petition; the court overruled the demurrer, and defendant excepted.

1. In the case of *Crawford v. Southern Railway Company,* 106 *Ga.* 870 (33 S. E. 826), it was said: "Conduct which might, under one set of circumstances, show that all ordinary and reasonable care and diligence had been observed, might, under a different set of circumstances, be insufficient to show an observance of such care and diligence. We think that such a rule could mean no more than this: taking the locality where the train is running and all the surrounding circumstances, if those in control of the movement of the train have no reason to apprehend that there may likely be a human being on the track in front of the engine, they are under no duty to one who may in fact be there, until they have actually discovered that he is there. But if, from the locality or surrounding circumstances, there is reason to apprehend that the track in front of the locomotive may not be clear of human beings, then, it seems to us, it is the duty of the employees of the company to keep a lookout ahead of the train; most assuredly so unless they are performing some duty which prevents their looking out upon the track in the direction in which the train is moving. Suppose that a locomotive engineer knows that, in a particular locality, people and especially children, without even an implied license of the railroad company, are likely to be upon the railroad-track, can he, while his train is rushing at great velocity through this locality, fail to look down the track in front of him, without being guilty of negligence relatively to a child who may be injured or killed by the locomotive? Are people, children as well as adults, likely, at least in daylight, to be very near or upon a railway-track within the limits of a pop-

ulous city, at points where they have no right to go upon the right of way of the company?  If they are, is a man charged with the running and control of a railroad-train, which may in an instant become so terrible and tremendous an instrument of destruction to people in its pathway, under no duty, relatively to such people, when his train is running through such a city, either to slacken its speed or to look ahead of his engine?  These are questions which we feel sure no court can, as mere matters of law, decide in the negative." Applying what was said in the extract above quoted and the ruling made in the first headnote of the case, it is clear that a question for decision by the jury was raised by the allegations of the petition in this case, as to whether or not the position of peril of the six year old child, in attempting to rescue whom Lillie May Cline was killed, was due to a failure upon the part of the employees of the defendant company to exercise due care in the running of the locomotive and train.  The point at which the little boy was placed in imminent peril of his life was, according to the allegations of the petition, "within a few feet of a grade crossing owned by said railroad company, near the town of Emerson.  The Tennessee Coal & Iron Company has an extensive plant at and near said place; . . . and upon both sides of said track near said place are houses occupied by the operatives of the said Tennessee Coal & Iron Company.  The crossing aforesaid was frequently and commonly used by the residents of said neighborhood, men, women, and children, and was a regular crossing for both pedestrians and vehicles.  Said crossing has been continuously used by members of the public at will as a common highway for more than 30 years."  It also appears from the petition that at the place referred to there is a regular and well-beaten trail alongside of and within three feet of the railroad track, and that the travel thereon is constant, open, and uninterrupted by pedestrians to and from the said locality to the town of Emerson, and this usage had existed for many years.  The territory from and including said point to the depot in the town of Emerson is practically a continuous town or village, and travel over and near said track and over the crossing was without objection from the defendant railroad company.  Under the facts and circumstances thus distinctly alleged, it was within the province of the jury to decide what was due care on the part of the railroad company and its employees in reference to the speed maintained by

55

the locomotive and train in passing this locality, and what was the duty resting upon the employees of the company in charge of the engine with reference to maintaining a lookout to ascertain the presence of any one who might be upon the track. If Lillie May Cline's companion, the six year old boy, was within a few feet of the crossing referred to, and in the path three or four feet from the railroad track, between a wire fence upon the edge of a deep fill on one side of her and the railroad track on the other, as was alleged, and this position of the six year old child could have been seen 500 feet away by the employees of the defendant on the engine, surely it was a question for the jury to decide, when the issue was raised by the pleadings, as to whether the employees of the defendant were negligent in continuing to run the train at the rate of 40 miles an hour and in not anticipating that a little child might attempt to cross the track so as to reach a place farther from the spot at which the rushing train would pass than he could possibly do if he remained where he was when the train first came in sight. We have no hesitancy in holding that the questions of duty and negligence raised by the petition in this case are questions proper for submission to the jury, as regards the deadly peril in which the little boy was placed when he first attempted to cross the track in view of the approaching train.

Having reached that conclusion, we think it necessarily follows, that, if Lillie May Cline, moved by an impulse which was perfectly natural, sprang upon the track in an attempt to save a child younger than herself, who was prone and helpless in front of an approaching locomotive, and was struck and killed by the locomotive while thus endeavoring to rescue her companion, the question as to whether or not the negligence of the employees of the company, if the jury should find that they were negligent under the attendant facts and circumstances, was the proximate cause of the death of the little girl, would be for decision by the jury. In the case of Eckert v. Long Island Railroad Co., 43 N. Y. 502 (3 Am. R. 721), it appeared that a man of mature age, seeing the danger of a child of tender years who was sitting on a railway track in front of a train which was approaching at the rate of 12 to 14 miles an hour, ran and seized the child and threw it from the track, but that he himself was struck by the engine and was so injured that he died. Suit was brought by the wife of the decedent to recover damages

for the wrongful and negligent killing of her husband; and in the course of the opinion affirming a judgment in favor of the plaintiff, the New York Court of Appeals said: "But the evidence further showed that there was a small child upon the track, who, if not rescued, must have been inevitably crushed by the rapidly approaching train. . . The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons. For a person engaged in his ordinary affairs, or in the mere protection of property, knowingly and voluntarily to place himself in a position where he is liable to receive a serious injury, is negligence, which will preclude a recovery for an injury so received; but when the exposure is for the purpose of saving life, it is not wrongful, and therefore not negligent, unless such as to be regarded either rash or reckless." See, also, Linnehan v. Sampson, 126 Mass. 506; Gibney v. State, 137 N. Y. 1; *Wilson* v. *Central Ry. Co., 132 Ga. 215.*

2. Paragraphs 11, 12, and 13 of the petition, basing the charge of negligence on the part of the defendant's employees upon the ground that the defendant had no right or authority to run and operate a train at the place and upon the track where the homicide complained of occurred, and that the operation of a train then and there by the defendant was a nuisance, are to be construed in connection with paragraph 14 of the petition, which charges that the "track at the time and place where said homicide was committed belonged to the State of Georgia, and had been leased to the Western & Atlantic Railroad Company for the operation of its trains thereon, and the defendant, Louisville & Nashville Railroad Company, had no legal right or authority under said lease or otherwise to operate a train upon said track, but that the operation of the train by defendant constituted a nuisance." The four paragraphs last referred to were specially demurred to, on the ground that they were immaterial and irrelevant. We are of the opinion that the question as to whether or not the defendant company could legally operate a train upon the track which had been leased by the State to the Western & Atlantic Railroad Company can not be raised in a suit for damages based upon an alleged tortious homicide committed by the defendant company, to which suit neither the State nor the Western & Atlantic Railroad Company

is a party. See the case of *Hazlehurst* v. *Seaboard Air-Line Ry.*, 118 *Ga.* 859. We therefore think that while the general demurrer to the petition as a whole was properly overruled, the demurrer to the paragraphs last referred to should have been sustained. The judgment of the court below is therefore affirmed, with the direction that the paragraphs of the petition last referred to be stricken.

The other grounds of special demurrer were without merit.

*Judgment affirmed, with direction. All the Justices concur.*