26902. COBB *v.* FIRST NATIONAL BANK OF ATLANTA.

DECIDED JULY 1, 1938.

*Louis M. Tatham, Benjamin B. & Richmond Garland,* for plaintiff.

*Neely, Marshall & Greene, W. Neal Baird,* for defendant.

SUTTON, J. Mrs. Daisy Cobb filed a suit for damages against the First National Bank of Atlanta. The petition was amended by alleging negligence in count 1, and by adding count 2, in which wilful and wanton misconduct was alleged. The defendant demurred to the petition as amended, on the ground that no cause of action was set forth; that the plaintiff was no more than a licensee, and no duty was owed to her by defendant except not to wilfully and wantonly injure her; that the petition set forth no cause of action growing out of wilful or wanton misconduct as therein alleged; and that plaintiff could have avoided the consequences of defendant's negligence. The plaintiff amended her petition by striking count 1, and relied on count 2 in which it was alleged: that the defendant is engaged in the general business of banking; that as part of its banking business it furnishes to the general public blank promissory notes; that about 3 p. m. on August 14, 1936, plaintiff went to defendant's bank to secure a blank promissory note; that the executive office and the business office of the bank are separated from each other by a gate; that after

plaintiff had entered the executive office an officer of the bank, acting within the scope of his employment, invited plaintiff to enter the business office to procure the note; that this officer then instructed a guard employed by the bank to show plaintiff from the executive office into the business office; that the bank kept the guard at the gate for the purpose of opening and closing the gate to allow passage to and from the business office; that the guard opened the gate and invited plaintiff to pass through, and said to plaintiff as he opened the gate, "Keep your eye on the bar above your head as you pass through the gate," and plaintiff as a result of this command did keep her eye and attention on the bar above her head as she started through the gate, and as a result of this command she believed it to be necessary for her safety to keep her eye on the bar as she passed through the gate; that she did keep her eye on the bar as she passed through the gate, and she did not see the bar that ran along the floor at the bottom of the gate; that as she passed through the gate her foot unexpectedly struck against the iron bar which ran along the floor at the bottom of the gate, and as a result she fell to the floor and suffered certain described injuries; that she did not know and had no warning that a bar ran along the floor at the bottom of the gate, and it was impossible for her to see the bar on the floor with her eyes fixed on the bar above her head; that she was lulled into believing that there was no danger at the bottom of the gate, by the command of the guard to keep her eye on the bar above her head as she passed through the gate; that the command was given as the gate was being opened, and plaintiff had no opportunity to observe the condition of the gate before the time the command was given; that the gate is made of latticed iron and opens in the center with both sides folding back against the wall, and the gate slides open and shuts upon two iron bars which run the entire length of the gate, one of the bars running along the top of the gate, and one running along the floor of the gate and protruding upward from the floor about two inches; that the bars are removable, and the gate is not completely open until the bars are removed; that the bars were not removed at the time plaintiff was invited to pass through the gate, and the gate with the bars not removed constituted a pitfall or mantrap, as the defendant well knew; that plaintiff's injuries were due to defendant's wilful conduct, to wit, in not removing the

bars before inviting plaintiff to pass through the gate; in instructing her to keep her eye on the bar above her head as she passed through the gate, thereby directing her attention away from the bar running along the floor; in not warning her of the bar that ran along the floor in conjunction with the warning as to the bar that ran along the top of the gate; in maintaining a dangerous trap on the premises; and in allowing a flange to stick up from the floor at the bottom of the gate at the time plaintiff was invited to pass through. The court sustained the demurrer to count 2, and dismissed the action. The exception is to that judgment.

■ "A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises, and who is permitted expressly or impliedly to go thereon merely for his own interest, convenience or gratification." Code, § 105-402. "The general test as to whether a person is an invitee or a licensee is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the benefit of the two, or to that of the owner, no invitation may be implied, and the injured person must be regarded as a licensee. *Petree* v. *Davison-Paxon-Stokes Co.*, 30 *Ga. App.* 490, 492 (118 S. E. 697); *Hyde* v. *A. & W. P. R. Co.*, 47 *Ga. App.* 139 (169 S. E. 854)." *Cook* v. *Southern Railway Co.*, 53 *Ga. App.* 723, 725 (187 S. E. 274). The plaintiff in the present case was a licensee. The petition shows that she went into the bank to obtain a blank promissory note for her own personal use, disconnected with any business for or with the bank; and no mutuality of interest between the plaintiff and the bank was shown.

■ But the owner of premises owes to a licensee a duty not to wantonly and wilfully injure him. "In the case of a licensee 'there is a slightly higher duty on the part of the owner or proprietor of the premises. He must not wantonly and wilfully injure the licensee; *and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent in-*

*juring him after his presence is known or reasonably should be anticipated.* (Italics ours.) The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done. See *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675). To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and things of that character.' Both of the above quotations are from *Mandeville Mills* v. *Dale, 2 Ga. App.* 607, 609 (58 S. E. 1060).' *Petree* v. *Davison-Paxon-Stokes Co.,* supra. A licensee enters on the premises at his own risk, and the owner thereof owes him no duty as to the condition of the premises, unless imposed by statute, except that he should not knowingly let him run into a hidden peril or wilfully or wantonly cause him injury. *Jones* v. *Asa G. Candler Inc.,* 22 *Ga. App.* 717 (97 S. E. 112); *Crossgrove* v. *Atlantic Coast Line R. Co.,* 30 *Ga. App.* 462 (118 S. E. 694); *Kinnebrew* v. *Ocean Steamship Co.,* 47 *Ga. App.* 704 (171 S. E. 385); *McCall* v. *McCallie,* 48 *Ga. App.* 99, 101 (171 S. E. 843); *Cook* v. *Southern Railway Co.,* 53 *Ga. App.* 723, 725 (187 S. E. 274). The defect in the premises in this case was alleged to be in a gate that separated the executive office and the business office of the bank. It was alleged that the gate was of latticed iron, about eight feet wide and six feet high, and opened from the center with both sides folding back against the wall; that the gate opened and closed on two iron bars, one running along the top of the gate and the other along the floor, and the one along the floor protruded upward about two inches from the floor; that the bars were removable, and that the gate was not completely open until the bars were removed; that the plaintiff's injuries were caused by the wilful and wanton misconduct of the defendant (a) in not removing said bars before inviting plaintiff to pass through said gate; (b) in instructing plaintiff to keep her eye on the bar above her head as she passed through the gate, thereby directing her attention away from the bar running along the floor; (c) in not warning her of the bar that ran along the floor, in conjunction with the warning as

to the bar that ran along the top of the gate; and that the partially opened gate with the bars not removed constituted a pitfall or mantrap. It is not alleged that the gate was improperly constructed, or that it was not the proper and usual type gate used in such places. Neither was it alleged that the room was dark or not well lighted, but it was alleged that the accident in question occurred about 3 o'clock in the afternoon on the 14th day of August. But it is contended that the partially opened gate, that is, with the bars at the top and bottom thereof not removed, constituted a pitfall or mantrap. Properly construing the petition on demurrer, can it be said that the gate or bars constituted a pitfall, mantrap or hidden peril? We think not. It was said in *Todd* v. *Armour & Co.*, 44 *Ga. App.* 609: "It can not be said that the maintenance of an open staircase 'well' on the premises, leading from the outside into the basement of the defendant's building, which was in no way concealed from view except by the darkness of the night, constituted wilful and wanton negligence, in that it amounted to the setting of a mantrap, such as was the case with the spring gun involved in the decision of this court in *Wilder* v. *Gardner*, 39 *Ga. App.* 608 (147 S. E. 911)." In *Cook* v. *Southern Railway Co.*, supra, it was said: "It is not alleged that the method of constructing this signal device was unusual or improper. That which is done as it should be done is ordinarily not negligence. An allegation that by reason of rain or mist a person, who was a licensee walking on a railroad iron rail, slipped and was injured, does not give rise to a cause of action, or constitute such railroad rail, properly laid, a mantrap or pitfall. . . Neither do we think that the fact that these iron pipes, which were parallel to the rails and placed on stands twelve feet apart and eighteen inches high, constituted a mantrap or pitfall."

Under the allegations of the petition it must be assumed that the banking room was well lighted, and that the bars at the top and bottom of the gate were plainly visible to the plaintiff. In these circumstances it was not incumbent on the defendant to have said anything to the plaintiff when she started to go through the gate, although it did call her attention to the bar at the top of the gate. In doing so the defendant was exercising a higher degree of care towards the plaintiff than the law required. The expression, "Keep your eye on the bar above your head," amounted to

no more than just calling this bar to the attention of the plaintiff, and was evidently done in the exercise of an abundance of precaution to prevent injury to the plaintiff, instead of to wilfully or wantonly injure her. It should not be warped and construed to mean that the plaintiff was to keep her gaze steadily fixed on this bar without looking at anything else or where she was stepping. The owner of premises owes to a licensee a duty not to wilfully and wantonly injure him; and it has been held by our courts in some of the cases above cited that it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises. The duty rested on the plaintiff to look and observe where she was walking. There is no allegation that she did not have normal eyesight. Obviously, the bars at the top and bottom of the gate were plainly visible, and the plaintiff, by looking or even taking a glance, could easily have seen them when approaching or passing through the gate. No dangerous act was being done; and as the bar at the bottom of the gate was plainly visible and could have been seen by the plaintiff, the alleged condition of the premises in the bank did not constitute a pitfall, mantrap, or hidden peril.

■ The court properly sustained the general demurrer to the petition.

*Judgment affirmed. Felton, J., concurs. Stephens, P. J., dissents.*

STEPHENS, P. J., dissenting. Conceding that the plaintiff was a licensee only, and that the defendant owed her only the duty to refrain from wilfully and wantonly injuring her, it was wilful or wanton on the part of the defendant to fail to exercise ordinary care to prevent injuring the plaintiff where her presence on the defendant's premises was known to the defendant and the defendant directed the plaintiff to proceed along the path along which she was going when she was injured. *Petree* v. *Davison-Paxon-Stokes Co.*, 30 *Ga. App.* 490 (118 S. E. 697). See also *Atlantic Coast-Line Railroad* v. *Heath*, 57 *Ga. App.* 763 (196 S. E. 125). The plaintiff was not negligent as a matter of law in not seeing the impediment on the floor in the gateway, notwithstanding there was a patent defect, when her attention at the time was directed

away from it and towards the top of the gateway by an employee of the defendant. *Wynne* v. *Southern Bell Telephone &c. Co.,* 159 *Ga.* 623 (4) (126 S. E. 388). I am of the opinion that the petition alleged acts from which a jury could infer that the plaintiff was injured by the negligence of the defendant amounting to wilful and wanton conduct, that the petition set out a cause of action, and that the court erred in sustaining the general demurrer.