30559. BLANCHARD *v.* RELIABLE TRANSFER COMPANY.

DECIDED NOVEMBER 17, 1944. REHEARING DENIED DECEMBER 12, 1944.

*Jack D. Evans, Randall Evans Jr.,* for plaintiff.
*Bussey, Fulcher & Hardin,* for defendant.

FELTON, J. This is a companion case to that of *Reliable Transfer Company* v. *May,* 70 *Ga. App.* 613 (29 S. E. 2d, 187),

in which it was ruled that the allegations of negligence were sufficient to withstand general demurrer. The questions decided in that case were not argued in this case. This case is an action filed by S. A. Blanchard, the owner of the ambulance involved in the collision, who seeks to recover for shock and fright, and resulting physical injuries alleged to have been caused by the negligence of the defendant and others. The court sustained the general demurrers to the petition and the plaintiff excepted.

The petition seeks to recover for physical injuries alleged to have resulted from the knowledge of the collision and that a death and personal injuries resulted, and for injuries sustained in an effort to rescue the persons injured by the collision. The petition alleged that the plaintiff was in bed at his home in Thomson, Georgia, on the date of the collision, when he heard his ambulance coming along Jackson Street in Thomson; that he knew it was his ambulance because it had been sent to carry Claude May to the Washington, Georgia, hospital; that he heard the siren of his ambulance as it came along Jackson Street and approached the intersection of Hill Street; that the distance from his home to the intersection was about one hundred yards; that he heard a loud crash, and "heard his siren stop sounding," and realized that his ambulance had collided with something at or near the intersection of Jackson and Hill Streets; that hearing the collision produced a shock to his nervous system, and he was conscious of a sudden pain in the neighborhood of his heart, which became acute and lasted for several hours; that he hurriedly put on his clothes and rushed to the scene, where he found that his ambulance and a large gasoline truck had collided and several people were lying on the ground, seriously wounded, or dead; that it was a bitterly cold morning, before daylight, when he reached the scene; that he felt the responsibility that rested on him as owner of the ambulance and realized that lives might be saved if the injured could be sent to a hospital without delay, and it was absolutely necessary to protect the injured from the cold; that another ambulance was called, and he had to lift the injured into the ambulance himself, as he could not enlist the assistance of by-standers, and in so doing he strained and overexerted himself, which he did not realize on account of the shock, fright, alarm, and excitement; that as soon as the ambulance left for Washington,

he began to suffer from hysteria and nervous shock, and, in spite of a doctor's efforts, he suffered for several hours from hysteria, because of the condition resulting from the collision and his knowledge thereof; that soon afterwards he learned, that Carl Gallahar, an employee of his, died before reaching the hospital, and that Claude May, the passenger in his ambulance, had suffered serious injuries, and that the ambulance was practically demolished; that when all this information reached him, he was thrown into wild hysteria from which he suffered for some time; that all of this time, the pain which he experienced when he first heard the crash continued and persisted; that he was not aware of having any serious disease before the collision, and that the serious and total impairment with which he is now afflicted was brought about as a result of his shock, injuries, fright, excitement, alarm, over-exertion, overtaxing his strength, and hysteria, and that if he was previously afflicted with a serious disease, his present condition is a result of the aggravation of such disease by the said experiences; that physical injury attended the cause of the fright, to wit, the sudden pain in the region of his heart, when he heard the crash of the collision; that his mental pain arose because of his knowledge that persons riding in his ambulance had come to harm as a result of a collision involving his ambulance.

■ While the petition may be subject to special demurrer because it does not show to what degree the plaintiff's present disability was caused by his overexerting himself in an effort to rescue the injured, and to what degree it was caused by shock and knowledge of the collision and injuries disassociated from the effort to rescue, the petition sets forth a cause of action for damages for injuries resulting from the effort to rescue. In cases where one's negligence causes injury or danger to another the negligence which causes the injury or danger is negligence as to the rescuer, and efforts to rescue will not be considered negligent if they are not rash or wanton. Whether the rescuer acts rashly or wantonly, except in plain and indisputable cases, is a question for the jury. "Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim;

it is a wrong also to his rescuer. . . The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have forseen the coming of a deliverer. He is accountable as if he had. . . The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion." Wagner v. International Ry. Co., 232 N. Y. 176 (133 N. E. 437, 19 A. L. R. 1, and annotations); Alabama Power Co. v. Conine, 213 Ala. 228 (104 So. 535); A. C. L. R. Co. v. Jeffcoat, 214 Ala. 317 (107 So. 456); L. & N. R. Co. v. Orr, 121 Ala. 489 (26 So. 35); Seaboard Air Line Ry. Co. v. Johnson, 217 Ala. 251 (115 So. 168); Central Coal & Coke Co. v. Porter, 170 Ark. 498 (280 S. W. 12); Lolli v. Market St. Ry. Co., 43 Cal. App. (2d) 166 (110 Pac. 2d, 436); Cote v. Palmer, 127 Conn. 321 (16 Atl. 2d, 595); Hatch v. Globe Laundry Co., 132 Me. 379 (171 Atl. 387); Lashley v. Dawson, 162 Md. 549 (160 Atl, 738); Arnold v. Northern States Power Co., 209 Minn. 551 (297 N. W. 182); Duff v. Bemidji Motor Service Co., 210 Minn. 456 (299 N. W. 196); Wolfinger v. Shaw, 138 Neb. 229 (292 N. W. 731); Tarnow v. Hudson & Manhattan R. Co., 120 N. J. L. 505 (1 Atl. 2d, 73); Highland v. Wilsonian Inv. Co., 171 Wash. 34 (17 Pac. 2d, 631); Christiansen v. Los Angeles & S. L. R. Co., 77 Utah 85 (291 Pac. 926); 38 Am. Jur. 739, § 80. While the cases cited above and those cited in the dissenting opinion do not involve an attempt to rescue such as we have in this case, we can see no difference in principle between the attempt to rescue in those cases and in this one. We do not mean to say that the defendant should have foreseen that the plaintiff would get out of bed in the nighttime and go to the scene of a wreck. It was, however, charged with the knowledge that if it injured a person by its negligence someone might reasonably be expected to attempt a rescue, and it does not matter by what circumstances the rescuer appears on the scene. Nor does it seem to us reasonable to say that a rescue must be from an impending act of the defendant or another. Saving of life from exposure or danger of death from lack of immediate medical care is just as effective as rescue from the wheels of a train. The injured persons in this case would have been no less dead if they had died from exposure or inattention than if they had been run over by

a train or killed by another act of the defendant or by another person. They were in no impending danger from human acts, but according to the petition they were in danger by reason of the negligence of the defendant even if the acts of negligence of the defendant had come to an end. The apparent necessity for rescue and assistance was made necessary by the alleged negligence of the defendant and we do not think a narrowing of the definition of rescue comports with reason, judgment, or the dictates of enlightened conscience.

■ The petition does not set forth a cause of action for injuries from shock, anxiety, or excitement, and resulting physical disability, which were wholly unassociated with and caused by the effort to rescue. The defendant's direct duties in the circumstances, in so far as this case is concerned, were to the driver of the ambulance and to the patient riding in it, not to injure them wilfully or negligently, and to the plaintiff in this case, not to so injure his ambulance. The plaintiff was at home in bed and no known guide as to foreseeability of consequences could reach him so far as injuries and facts here appear. "The risk reasonable to be perceived defines the duty to be obeyed." Palsgraf *v.* Long Island R. Co., 248 N. Y. 339 (162 N. E. 99, 59 A. L. R. 1253). The foresight of the consequences involves the creation of a duty. MacPherson *v.* Buick Motor Co., 217 N. Y. 382 (111 N. E. 1050, L. R. A. 1916F, 696). Certain cases are cited where negligent acts have directly frightened persons by reason of the violation of a direct duty to such persons to secure their persons from fright. The fright and its consequences here are alleged to have resulted indirectly to the plaintiff by reason of injuries to third persons. The principle is clearly stated in 2 Restatement of the Law of Torts, p. 850, § 312 (e), and definitely precludes a recovery for such injuries. The statement is as follows: "On the other hand, an act, which is merely negligent as threatening an immediate harm to a third person, is not negligent to another, solely because of the possibility that the peril or harm of such a person may indirectly cause fear, grief, or similar emotional disturbance to others because of their interest in and affection for the third person and the possibility that they may be in such a physical condition that the emotional disturbance may be physically harmful. This is so irrespective of whether the other witnessed the third person's peril or harm

or is informed of it immediately thereafter or at some subsequent period, and irrespective of whether they are or are not members of the same immediate family."

· The court erred in sustaining the general demurrers and in dismissing the action.

*Judgment reversed. Sutton, P. J., concurs.*

PARKER, J., dissenting. I agree with so much of the majority ruling in the second division of the opinion as eliminates the plaintiff's claim for damages on account of shock, anxiety, excitement, and resulting disability; but I can not agree to the first division of the opinion and the judgment of reversal which hold that the plaintiff's petition set forth a cause of action for his physical injuries suffered in his capacity as a "rescuer." The principles contained in the second division of the majority opinion with regard to the remoteness of the cause, the foreseeing of the consequences, and the duty owed by the defendant apply as forcibly to the plaintiff's claim predicated upon his injuries sustained as an alleged rescuer. To quote from the majority opinion: "The plaintiff was at home in bed and no known guide as to foreseeability of consequences could reach him so far as injuries and facts here appear. *'The risk reasonable to be perceived defines the duty to be obeyed.'* . . *The foresight of the consequences involves the creation of a duty.''* [Italics mine.] Could the principle be stated in any language better than that quoted in the majority opinion and repeated above in italics? Could the driver of the defendant's truck, when parking it allegedly in violation of the rules of the Public Service Commission, have reasonably foreseen that the plaintiff at home in bed would arise following a collision of his ambulance with a moving truck (a collision alleged to have been the result of the defendant's illegal parking, and not any active negligence by it) and go to the scene of the casualty, become hysterical from the sight to such an extent that his loss of ordinary reason would cause him to overestimate his physical strength in attempting to move injured persons, and sustain physical injuries on account of the strain? Did the defendant owe any duty to the plaintiff to prevent his strain and overexertion occasioned through the medium of the chain of circumstances alleged by the plaintiff? I think that to ask these questions is to answer them. The injuries and damages claimed in this case

are palpably too remote to be predicated upon the alleged negligence of the defendant in its parking its truck in an illegal fashion.

᾽ The majority ruling upholding the petition as setting forth a cause of action on the rescue theory cites as authority therefor several foreign cases, which even if in point, are not controlling or binding on our courts. An examination of the most liberal of these foreign cases reveals that no such remote cause in relation to the alleged injuries existed as is in the case before us. It seems to me untenable to extend the rescue doctrine to cover a situation whereby a person might recover for his self-inflicted injuries caused by his own voluntary exertion after the casualty allegedly attributable to the defendant's negligence had happened, and after all causal acts on the part of the defendant had ceased. My impression from reading the decisions of our own courts dealing with so-called rescue cases is that under our law the impulse or urge to rescue merely mitigates in favor of the rescuer to excuse, or reduce the degree of, what ordinarily would be negligence on his part, namely, his voluntarily exposing himself to peril. No new duty is created and no duty extended, nor does the deed of rescue broaden the scope of the relation of the cause to the ultimate injury. See *Louisville & Nashville R. Co.* v. *Cline,* 136 *Ga.* 863 (72 S. E. 405) ; *Atlantic Coast Line R. Co.* v. *Daniels,* 8 *Ga. App.* 775 (70 S. E. 203) ; and *Atlantic Coast Line R. Co.* v. *Wildman,* 29 *Ga. App.* 745 (116 S. E. 858).