47427. MONTEGA CORPORATION v. GROOMS.

EBERHARDT, Presiding Judge. Mrs. Evelyn G. Grooms brought suit against Montega Corporation alleging that the defendant was engaged in the construction of an apartment complex and had bulldozed an excavation on the site in which surface waters from a heavy rain accumulated, creating a pond which was

about nine feet deep at the lower end. Her son, Orlando Grooms, aged 12, was drowned in the pond when he jumped into it for the purpose of rescuing his little four-year-old sister who had either fallen or jumped into the water and was in distress.

The defendant took depositions of plaintiff and her husband and, based upon these, together with an affidavit of defendant's president and a surveyor's plat of the construction site, moved for summary judgment. In opposition to the motion plaintiff submitted the affidavit of an employee of the defendant, who asserted that on several occasions he had observed children playing around the job site and that he had suggested to the defendant's president that the excavation be filled or fenced. Also submitted was the affidavit of a witness who stated he had seen plaintiff's children go onto the construction site toward the pond; that shortly afterwards he saw the little girl in the water in apparent distress; that decedent jumped into the water, after which affiant went to the pond, jumped in and rescued the little girl but failed in rescuing decedent, who was later found and brought up from the bottom of the pond by another. The accident happened about 8:30 p.m., June 17, 1971.

It appears that the excavation was made for the purpose of burying trash and debris which accumulated in the course of the construction (the burning of it being prohibited under Code Ann. Ch. 88). There was a chain link fence along the line between the Montega property and plaintiff's property which was too high for the children to have climbed; it had been necessary for them to go around it in order to get on the defendant's property. There was a barbed wire strand above the fence. The excavation was approximately 45 feet from the nearest property line. Defendant's president testified that the plaintiff's children "had never been invited upon the premises, had never been

employed to do any job for Montega Corporation, were not authorized to be on the land, and were upon it without the knowledge of Montega Corporation." The motion for summary judgment was denied and defendant, obtaining a certificate for review, appeals. *Held:*

1. The evidence submitted, both in support of and in opposition to the motion, discloses that plaintiff's daughter was a trespasser and that her son was at most a bare licensee, to whom the defendant owed no duty save that of refraining from wilfully and wantonly injuring them. *Atlantic C. L. R. Co. v. O'Neal,* 180 Ga. 153, 156 (178 SE 451); *Washington v. Trend Mills,* 121 Ga. App. 659 (2) (175 SE2d 111). One's status as a trespasser, licensee or invitee is not determined by his age or his capacity, mental or physical. *Crosby v. Savannah Electric &c. Co.,* 114 Ga. App. 193, 196 (150 SE2d 563); *Atlanta & West Point R. Co. v. West,* 121 Ga. 641, 646 (49 SE 711, 67 LRA 701, 104 ASR 179). It does not appear that the defendant had knowledge of the presence of the children on its premises on the occasion involved. It is not contended that the children were expressly invited to come onto defendant's premises, and the facts appearing do not support a claim of implied invitation. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398 (39 SE 82, 54 LRA 314); *McCall v. McCallie,* 48 Ga. App. 99 (7) (171 SE 843); *Fickling v. City Council of Augusta,* 110 Ga. App. 330 (138 SE2d 437); *Crosby v. Savannah Electric &c Co.,* 114 Ga. App. 193 (1, 2, 6), supra. That an owner may have permitted children to play upon his premises, or that there may be conditions thereon which are alluring to them does not amount to an implied invitation to children to go upon his land. *Southern Cotton Oil Co. v. Pierce,* 145 Ga. 130 (88 SE 672); *Atlantic C. L. R. Co. v. Corbitt,* 150 Ga. 747 (105 SE 358); *Atlantic C. L. R. Co. v. O'Neal,* 180 Ga. 153, supra; *Seaboard A. R. Co. v. Young,* 20 Ga.

App. 291 (93 SE 29); *Manos v. Myers-Miller Furn. Co.,* 32 Ga. App. 644 (124 SE 357); *Haley Motor Co. v. Boynton,* 40 Ga. App. 675 (150 SE 862); *Smith v. Ga. Power Co.,* 43 Ga. App. 210 (158 SE 371); *Brown v. Bone,* 85 Ga. App. 22 (68 SE2d 190).

The placing of the chain link fence on the property line between the lands of plaintiff and defendant emphasizes a lack of invitation.

2. "The owner owes no duty to a licensee to inspect the premises or to prepare a safe place for his reception. *Cobb v. First Nat. Bank of Atlanta,* 58 Ga. App. 160 (2a, b) (198 SE 111); Restatement, Torts 2d, § 342; Prosser, Torts (3d Ed.) Ch. 11, § 60." *Kahn v. Graper,* 114 Ga. App. 572, 577 (150 SE2d 10); *St. Clair v. City of Macon,* 43. Ga. App. 598 (159 SE 758); *Butler v. Brogdon,* 110 Ga. App. 352 (138 SE2d 604).

There is much similarity in the facts and in the positions of the parties here and in *Bowers v. Texas Co.,* 65 Ga. App. 874 (16 SE2d 765), where, holding that an injured child, whether trespasser or licensee, had no cause of action against the owner, it was asserted: "As a general rule, the owner of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, intruders, idlers, bare licensees, or others who come upon them, not by any invitation, express or implied, but for their own purposes, their pleasure, or to gratify their curiosity, however innocent or laudable their purpose may be."

3. An open pond of water, whether natural or artificial does not, of itself, constitute a mantrap. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398, supra; *Crawford v. Pollard,* 55 Ga. App. 702 (191 SE 162); *Crews v. Slappey,* 110 Ga. App. 496 (138 SE2d 919). Cf. *Todd v. Armour & Co.,* 44 Ga. App. 609 (162 SE 394); *Etheredge v. Central R. Co.,* 122 Ga. 853 (50 SE 1003). As to what constitutes a mantrap, see generally *Crosby v. Savannah Electric &c. Co.,* 114 Ga. App. 193, 198,

supra; *Kahn v. Graper,* 114 Ga. App. 572, 576, supra; *Wilder v. Gardner,* 39 Ga. App. 608 (147 SE 911); *Stowe v. Gallant-Belk Co.,* 107 Ga. App. 80 (3a) (129 SE2d 196); *Baxley v. Williams Const. Co.,* 98 Ga. App. 662, 670 (106 SE2d 799).

4. The turntable or attractive nuisance doctrine does not apply to ponds or other water hazards. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398, supra; *St. Clair v. City of Macon,* 43 Ga. App. 598, supra; *McCall v. McCallie,* 48 Ga. App. 99, supra; *Fickling v. City Council of Augusta,* 110 Ga. App. 330, 332, supra; *Crews v. Slappey,* 110 Ga. App. 496, supra; *Venable v. Langford,* 116 Ga. App. 257, 258 (157 SE2d 34).

5. Since it appears that the deceased was a trespasser, or, at most a bare licensee, the defendant "would not be liable for anything but affirmative acts amounting to wilfulness." *Baxley v. Williams Const. Co.,* 98 Ga. App. 662, 670, supra. No such affirmative acts on the part of the defendant appear, by pleading or by evidence.

6. "A person who creates or maintains a pond of water upon private premises is under no duty to maintain it in a condition of safety, as against drowning, for children who, with the mere acquiescence and knowledge of the owner but without express and implied invitation, come upon the premises and go in the pond." *St. Clair v. City of Macon,* 43 Ga. App. 598 (1), supra.

"One who makes an excavation upon his land is not bound to so guard it as to prevent injury to children who come upon it without his invitation, express or implied but who are induced to do so merely by the alluring attractiveness of the excavation and its surroundings." *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398, supra. That the excavation may be filled with water does not change this rule. *Crawford v. Pollard,* 55 Ga. App. 702, supra; *McCall v. McCallie,* 48 Ga. App. 99, supra; *Crews v. Slappey,* 110 Ga. App.

496, *supra*. That the excavation was not itself fenced so that children could not get to it does not impose liability on the owner. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. App. 398, supra.

7. "The reasoning of these decisions, some of which are cited infra, is that the maintenance of a pond does not expose persons not invited on the land to an *unreasonable* risk of harm . . . This is true regardless of the location of the pond or water hazard with a traveled way or its general accessibility. *McCall v. McCallie,* 48 Ga. App. 99, supra; *Crawford v. Pollard,* 55 Ga. App. 702, supra. The artificial character of the water hazard has no bearing on liability or nonliability. *McCall v. McCallie,* 48 Ga. App. 99, supra. A deep hole or ledge under water imposes no liability upon the landowner for the drowning of a child either under the attractive nuisance doctrine or on the theory of actual negligence. *McCall v. McCallie,* 48 Ga. App. 99, supra. Neither does the fact that the water in which the child drowned was muddy. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398, supra. Even the fact that children are accustomed to play at the place of danger with knowledge of the owner gives rise to no implied invitation. *St. Clair v. City of Macon,* 43 Ga. App. 598, supra; *McCall v. McCallie,* 48 Ga. App. 99, supra; *Crawford v. Pollard,* 55 Ga. App. 702, supra." *Fickling v. City Council of Augusta,* 110 Ga. App. 330, 332, supra. That there may have been water-logged floating rafts in the water, which the children tried to get on and because of lack of support, drowned, does not give rise to a cause of action against the owner. *Crews v. Slappey,* 110 Ga. App. 496, supra. Nor does it matter that the bottom of the water hazard may be muddy and sticky.

8. (a) "Counsel invoke a further rule, or alleged rule, viz., that the [deceased] went into a place of danger lawfully to rescue [his] sister, and therefore was rightfully there and entitled to protection. The defendant had a right

to rely upon [its] right to privacy, and to believe that [its] premises would only be invaded by those whom [it] should choose to invite and warn against the dangers of the place. Was [it], then, bound to suppose that somebody might trespass, and to have someone on hand to warn and protect some possible rescuer of an imaginary trespasser? We think not." Ryan v. Towar, 128 Mich. 463, 480 (87 NW 644). In Ryan it appeared that the defendant had an overshot water wheel and a pit beneath filled with water. Plaintiff, aged between 12 and 13 years, saw her eight-year-old sister playing on the wheel and get caught between the wheel and the side of the pit in the water. In an effort to rescue the sister plaintiff was injured. For some time it had been the custom of children to play on the wheel as they went by it on their way home from school.

(b) "Loss of life incurred in rescuing another from a situation of peril gives rise to no cause of action against one who is guilty of no negligence, either as to the person whose safety was imperiled or *as to the rescuer after his efforts to make the rescue had begun.*" (Emphasis supplied.) *Jackson v. Standard Oil Co.,* 98 Ga. 749 (1) (26 SE 60). Hence, in *Fickling v. City Council of Augusta,* 110 Ga. App. 330, supra, we held that no cause of action was alleged for the death of a nine-year-old child who drowned in defendant landowner's pond while attempting to rescue another child in distress in the pond, since "The owner or occupier of land does not have a duty to protect persons —even small children—not invited on the land from hazards that may exist from the presence of a pond of water, since the maintenance of a pond by the owner or occupier is not an *unreasonable* risk of harm to persons not invited on the land."

(c) An owner's liability for injury or death suffered by one who attempts to rescue another who is in distress must rest upon some negligence or violation of duty to

the person in distress, since the "apparent necessity for rescue and assistance [is] made necessary by the . . . negligence of the defendant." *Blanchard v. Reliable Transfer Co.,* 71 Ga. App. 843, 847 (32 SE2d 420). Accord: *Atlantic C. L. R. Co. v. Wildman,* 29 Ga. App. 745 (1) (116 SE 858); *Atlanta & C. A. L. R. Co. v. Leach,* 91 Ga. 419 (17 SE 619, 44 ASR 47). "Liability by a defendant to a rescuer must rest on a breach of a duty owed directly by the defendant to the rescuer, or by the defendant to the person whose rescue is attempted." Brady v. Chicago & N. W. R. Co., 265 Wis. 618, 625 (62 NW2d 415). The negligence must be actionable negligence. The rescue doctrine is applicable only where the situation which invites rescue is created by some tortious act of the defendant. "[L]iability in rescue cases is predicated upon a defendant's conduct in negligently creating the peril which inspired the attempted rescue . . . the doctrine has no application where the defendant's conduct was not negligent or a tortious wrong." 57 AmJur2d 608, Negligence, § 228. Under the pleadings, the evidence and the citations of authority in the foregoing divisions there was simply no negligence on the part of Montega, and no breach of duty owed by it either to the deceased or to his sister.

9. "Our conclusion is that the evidence in this case does not disclose the breach of any duty lawfully due from the defendant. . . to the deceased child, and consequently [would] not warrant a finding that his death was occasioned by its negligence." *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398, 413, supra. Cf. *Frankum v. Farlinger,* 35 Ga. App. 305 (132 SE 923). See also *Crews v. Slappey,* 110 Ga. App. 496, supra; *Venable v. Langford,* 116 Ga. App. 257, supra.

Since the defendant did not owe the deceased any legal duty which it neglected to perform, no action could be maintained against it for negligence on its part. Actionable negligence does not exist in the absence of

the breach of some legal duty. *Savannah F. & W. R. Co. v. Beavers,* 113 Ga. 398, supra. The entire absence of blame on the part of the deceased does not establish fault on the part of the defendant. *Cook v. Kroger Baking &c. Co.,* 65 Ga. App. 141, 142 (15 SE2d 531); *Simpson v. Brand,* 108 Ga. App. 393, 400 (133 SE2d 393).

10. The evidence submitted in support of the motion, when considered in the light of applicable legal principles, pierced the pleadings, showing the lack of any genuine issue as to any material fact. That which was submitted in opposition to the motion failed to raise or show the existence of such an issue. It appears as a matter of law that defendant was entitled to a summary judgment in its favor.

*Judgment reversed. Bell, C. J., Hall, P. J., Quillian and Stolz, JJ., concur. Pannell, Deen, Evans and Clark, JJ., dissent.*

ARGUED SEPTEMBER 14, 1972 — DECIDED JANUARY 5, 1973 — REHEARING DENIED MARCH 1, 1973 — ■

*Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler,* for appellant.

*Garland & Garland, Eugene R. Kiser,* for appellee.

DEEN, Judge, dissenting. The defendant was the owner of a large tract of land on which it had erected a number of apartment houses, and at the time of the child's death was engaged in erecting other apartments at the rear of the tract facing Springdale Road. Workmen were in the process of clearing the land; they would dig a large hole into which they shoveled debris, and then fill it up and dig another one. The one in question measured some 13 by 40 feet and sloped in depth from one foot to 12 or 14 feet. It had been raining steadily for several days; run-off water from the hill filled the hole to the brim over a mucky

bottom, at the southeast corner of the tract facing Springdale Road and 45 feet from the property line dividing it from the decedent's home. A chain link fence partly divided the properties but was discontinuous and, according to the father "you could go right to it [the excavation]. You don't have to go around the fence from my yard. What you mean is some part of my yard you have to go around. I am talking about right where the children play in front there. You go straight to the place." In other words, from the plaintiff's front yard to the excavation, 45 feet away, in a straight line, there was no barrier, either because there was a gap in the fence or because the fence did not extend all the way to the corner. Further, the decedent was used to going on the defendant's property in this area because the defendant had allowed his grandparents to maintain a vegetable garden there. The boy drowned while attempting to rescue his five-year-old sister who had fallen into the recently dug, recently waterfilled excavation hole. Although he could swim, he apparently became stuck in the viscous matter at the bottom, since he did not surface after diving and there was mud in his lungs.

The dangers inherent in the builder's penchant for digging holes had on more than one occasion been called to the attention of the president of the defendant company prior to the tragedy by one of the employees who told him that he should either put a fence around the property or fill up the holes; that the children wouldn't stay away from the property, and that if it weren't fenced or guarded or lights put up there would be problems. There were no "Keep Off" or "No Trespassing" signs.

The above is a fair statement of the evidence on behalf of the plaintiff and as this appeal involves the denial of summary judgment the inferences must be in the plaintiff's favor. *Burnette Ford v. Hayes*, 227 Ga. 551 (181 SE2d 866).

In deciding the case two elements must be considered.

The first is the status of the children; the second the degree of negligence. In my opinion the children were licensees, both because of the permission previously extended as to the garden area and because the defendant, with knowledge of their usual or frequent presence, impliedly acquiesced therein and is "under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence" even though they are technically trespassers. *Western & A. R. v. Michael,* 44 Ga. App. 503 (2) (162 SE 294).

The plaintiff, however, does not rest her case on this premise but alleges that the act of the defendant in digging the hole almost at the edge of the property line and leaving it filled with water with actual knowledge of the daily presence of children and after being warned by an employee that they were likely to be injured was guilty of a wilful and wanton act, in reckless disregard of the inherent dangers of such a temporary excavation to children which it knew had a habit of playing in the vicinity.

The decedent was 12 years old and could swim; he was attempting a rescue of a five-year-old sister who had slipped in the treacherous mud surrounding the excavation and had fallen into the water in the late twilight after the workmen had left the site. These facts are of legal importance, not in raising any duty of care on the part of the defendant, but because they show no negligence on the part of the decedent who stood in the shoes of the five-year-old infant. All of this was less than 100 feet from the child's front door and in an area where she was accustomed to go, in a newly dug pit which had only in the last few days filled with water. "One aware of the custom of children to play around a potentially dangerous structure on its premises is bound to use ordinary care to avoid injuring them after their presence is known or reasonably to be anticipated." *Perry Bros.*

*Transportation Co. v. Rankin,* 120 Ga. App. 798 (172 SE2d 154), citing *Clinton v. Gunn-Willis Lumber Co.,* 77 Ga. App. 643 (49 SE2d 143), and see *McCall v. McCallie,* 48 Ga. App. 99 (1) (171 SE 843); *Central of Ga. R. Co. v. Ledbetter,* 46 Ga. App. 500, 504 (168 SE 81). If the children were licensees or trespassers in whose presence the defendant had acquiesced, after being warned of their presence and the danger of the unguarded hole, it might well be wilful and wanton to take no action, and the rain-filled hole may well, in the opinion of the jury, constitute a pitfall. It has been held that an incompleted porch on the premises may be such a hidden peril. *McKenna v. Jordan,* 123 Ga. App. 801 (182 SE2d 550). See also *Whittle v. Johnston,* 124 Ga. App. 785 (186 SE2d 129).

Prosser's Law of Torts (3d Ed.) p. 372, Ch. 11, § 59, "Trespassing Children" sheds much light on the subject, pointing out, passim., that while in cases such as this the attractive nuisance doctrine is not involved, and while there is and should be no duty on a landowner to make the premises completely "childproof," the four conditions of liability set up in the Restatement, Law of Torts, are now generally applied. They are (1) the owner knows the children are likely to trespass in the area; (2) he knows or should know that the condition which causes the injury does in fact involve an unreasonable risk of harm to such children; (3) the danger is of such a character that the infant, because of its immaturity, would not be expected to comprehend it, and (4) the risk of harm outweighs the utility to the landowner. Other considerations are that this land was in a thickly settled residential area rather than being a country pond or lake; that it was a temporary pit and temporarily filled with water rather than a familiar and permanent structure such as a lake or swimming pool, and that the owner had both been apprised of the presence of the children and warned of the danger.

In support of the Restatement criteria as related to

trespassing children, and the citation of cases from many jurisdictions showing this to be the prevailing trend, see the excellent article "Tort Liability of Occupiers of Land; Duties Owed to Trespassers" by Fleming James, Jr., 63 Yale Law Journal, pp. 144, 161 et seq. "Where a duty of care is owed, the likelihood of the presence of children has great bearing on deciding whether or not conduct is reasonable. Under the older theory here, no duty of care was owed to trespassers and such a duty was not created by the likelihood that children—or anybody else—would trespass. . . . The feeling grew, however, that the real basis [of liability] was not the spurious invitation but the 'value of child life to the community' and the great probability of harm to that interest from dangerous conditions of land left exposed beyond the needs of their use; especially as an increasingly industrial society multiplied both the dangers and the devices which might reduce them." Id., pp. 163, 164. This article, like the Restatement, discusses liability to child trespassers generally, but it must be remembered that the case at hand goes much further in that it shows actual notice to the defendant of danger inherent in the pits and of the children's presence coupled with a warning that if steps were not taken harm was likely to befall, plus an allegation that in such circumstances the failure to act was wilful and wanton. Certainly the failure to take action gives rise to a jury question as to acquiescence in the children continuing to come on the land. And Georgia has always been among those states which adopt the more liberal view and hold, that even as to trespassers, knowledge may imply acquiescence and acquiescence may imply a greater duty of care. This was well stated as far back as 1896 in *Burton v. W. & A. R. Co.,* 98 Ga. 783, 785 (25 SE 736): "While an acquiescence by an owner of land in the use by others of a road or pathway thereon, under circumstances which do not amount to an invitation, does not impose upon him the duty of keeping

the premises in suitable condition for such use, yet if he digs a dangerous hole into which persons passing along the way are liable to fall if not warned of it, he is under the duty of warning them or of guarding against such an occurrence."

No case cited in the majority opinion is sufficiently analogous to demand a different conclusion. The opinion in *Atlantic C. L. R. Co. v. O'Neal,* 180 Ga. 153 (178 SE 451), specifically points out (page 156) that the case is on demurrer and construed *against* the plaintiff. Here on summary judgment it must be construed in his favor. *Crosby v. Savannah Elec. &c. Co.,* 114 Ga. App. 193 (150 SE2d 563) was also decided on demurrer and involved a child climbing a power pole; there was no knowledge on the part of the owner, and in such a case the utility of high uninsulated lines is greater than the probable danger from a trespasser climbing the pole. *Fickling v. City Council of Augusta,* 110 Ga. App. 330 (138 SE2d 437) was decided on demurrer, and involved a city pond which had existed for over 20 years. We are not concerned with the attractive nuisance doctrine, as was *Southern Cotton Oil Co. v. Pierce,* 145 Ga. 130 (88 SE 672) and other cases cited on p. 335. *Bowers v. Texas Co.,* 65 Ga. App. 874 (16 SE2d 765) was decided on demurrer and involved a heavy tire which did no damage until the child went over and moved it. In *Washington v. Trend Mills,* 121 Ga. App. 659 (175 SE2d 111), no knowledge or reasonable anticipation appears of the presence of a child who ran into a conveyor belt while chasing a ball. *Savannah, F. & W. R. Co. v. Beavers,* 113 Ga. 398 (39 SE 82) and *Crews v. Slappey,* 110 Ga. App. 496 (138 SE2d 919) were actions relying on proof of attractive nuisance to establish ordinary negligence. Here wilful and wanton misconduct is charged and there is no attempt to base the case on attractive nuisance; so far as appears, the child simply slipped in the mud and fell into the newly dug pit, where she drowned because it had filled with rainwater. *Crawford v. Pollard,* 55 Ga.

App. 702 (191 SE 162), was decided on demurrer, after proceeding on the theory that the defendant railway, in allowing fish to accumulate in its water cisterns, was creating an attractive nuisance. *McCall v. McCallie,* 48 Ga. App. 99, supra, has been quoted above in the interest of this dissent; it was decided on demurrer, but it draws a clear distinction between situations where the defendant *knows* of the presence of children and the danger of the condition, and those where he does not. The quotation from Ryan v. Towar, 87 NW 644, is hardly apt, since it discusses the right of a landowner "to believe that its premises would only be invaded by those whom it should choose to invite," who has no duty to "warn some possible rescuer of an imaginary trespasser." Here the defendant did not have to imagine the "invasion"; it had been several times warned of the actual situation.

My position, briefly, is this: Where in a residential area the defendant has allowed members of a contiguous landowner's family (licensees) to garden on its land, and has acquiesced in children playing thereon, and digs a large temporary hole which is muddy and filled with water, and where after actual notice that it is dangerous to children and that children are playing there it makes no effort whatever either to reduce the danger or eliminate their presence, I would leave it to a jury to decide both the degree of care owed and the negligence, if any, of the defendant.

I am authorized to state that Judges Pannell, Evans and Clark concur in this dissent.